**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jacqueline Madsen,                    )    No. CV 04-1959-PHX-JAT
                                      )
              Plaintiff,              )    **ORDER**
                                      )
vs.                                   )
                                      )
                                      )
Fortis Benefits Insurance Co., et al.,)
                                      )
              Defendants.             )
                                      )
                                      )
_____)

Pending before the Court are Defendants' Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Doc. # 87), Plaintiff's Motion for Partial Summary Judgment Re: Breach of Contract (Doc. # 89), Plaintiff's Motion to Strike the Post-Deposition Affidavits of Drs. Beckman, Brumblay, and Heidenreich (Doc. # 94), Plaintiff's Motion to Strike Paragraphs 40, 41, and 44 from Defendants' Statement of Facts and the Paragraphs in the Post-Deposition Affidavit of Ira Ehrlich, M.D. Referenced Therein (Doc. # 95), Plaintiff's Motion to Strike Certain Portions of Defendants' Controverting Statement of Facts (Including Evidentiary Objections) and Defendants' Statement of Additional Material Facts (Doc. # 105), Plaintiff's Motion to Strike Certain Portions of Defendants' Controverting and Supplemental Statement of Facts (Including Evidentiary Objections) (Doc. # 119), and Plaintiff's Motion to Supplement the Record on Fortis' Pending Motion for

1   Summary Judgment (Doc. # 114).[1]

2   I.   BACKGROUND

3   Plaintiff, Jacqueline Madsen, claims she was an additional insured under a non-

4   renewable Short Term Medical Policy (policy no. 5780934) (the "Policy") issued by Fortis

5   Benefits Insurance Company and/or Fortis Insurance Company (the "Defendants").[2]  The

6   Policy had an effective date of April 12, 2003.[3]  Plaintiff has filed suit against Defendants

7   for breach of contract, bad faith and punitive damages arising out of Defendants' denial of

8   coverage for Plaintiff's coronary artery disease under the Policy's pre-existing condition

9   exclusion.

10   On November 28, 2001, Plaintiff visited Dr. David Lee Ginsburg, a board certified

11   internist practicing in Illinois, during which time Dr. Ginsburg did a work-up of Plaintiff's

12   risk of developing coronary artery disease.[4]  After the work-up, which included blood tests,

13   Dr. Ginsburg instructed one of his nurses to explain to Plaintiff that she needed to modify her

14   behavior, by going on a low-fat diet, exercising, quitting smoking, and losing weight, to

---

[1]Also pending is Plaintiff's Motion for Summary Disposition of Her Motion to Supplement the Record on Fortis' Pending Motion for Summary Judgment (Doc. # 116). However, pursuant to the stipulation of the parties, and the Court's October 4, 2006, Order (Doc. # 122), Defendants were provided additional time to respond to Plaintiff's motion to supplement the record. Accordingly, Plaintiff's motion for summary disposition (Doc. # 116) will be denied as moot.

[2]While Defendants contend only Fortis Insurance Company issued the Policy, Plaintiff contends that there is a question of fact concerning whether Fortis Insurance Company and/or Fortis Benefits Insurance Company issued the Policy.  Defendants address this dispute in their motion for summary judgment.

[3]Prior to the issuance of the Policy, Plaintiff was insured under another non-renewable Short Term Medical Policy issued by Fortis Insurance Company.

[4]Dr. Ginsburg also ordered numerous other tests to check the functioning of Plaintiff's thyroid, kidneys, liver, and bladder.

1   reduce her risk of developing coronary artery disease.[5]  Thereafter, on February 27, 2002,

2   Plaintiff visited Dr. Ginsburg's office for follow-up lab tests, specifically a lipid panel.  The

3   results of the lipid panel showed a similarly elevated cholesterol level as before.  Again, Dr.

4   Ginsburg instructed his nurse to advise Plaintiff to continue the low-fat diet, exercise, stop

5   smoking, and lose weight, as Dr. Ginsburg was still concerned Plaintiff could develop

6   coronary artery disease if she did not modify her behavior.

7          On July 3, 2002, Plaintiff visited Dr. Ginsburg, complaining of soreness/tenderness

8   under the arms and the occasional feeling of something going from the epigastrium to the

9   throat three times per month associated with dizziness and sweating.  Dr. Ginsburg was

10  concerned that the symptoms could be a sign of coronary artery disease.[6]  Plaintiff next

11  visited Dr. Ginsburg on April 14, 2003, two days after the effective date of the Policy,

12  complaining of "fatigue," "shortness of breath with light activity, worse the past month," and

13  non-exertional "chest pain once in a while" lasting one to two minutes.[7]  Dr. Ginsburg again

14  expressed concern that the described symptoms could indicate coronary artery disease, plus

15  several other diseases.[8]  Dr. Ginsburg considered ordering a cardiopulmonary stress test

16  because of his concerns that the symptoms could indicate coronary artery disease; however,

17  he wanted to conduct other tests first.  Nonetheless, no further testing was done.

18         On July 18, 2003, Plaintiff went to the emergency room complaining of chest pain

19  ────────────────

20         [5]Plaintiff smoked a pack of cigarettes a day, was overweight, had an elevated

21  cholesterol level, and had a family history of coronary artery disease (her mother had a heart attack at age 49).

22         [6]Dr. Ginsburg also testified that the soreness under the arm could indicate a swollen

23  gland and that the feeling of something going from the epigastrium to the throat could indicate acid reflux.

24

25         [7]Since her prior visits, Plaintiff's weight had increased and she continued to smoke.

26         [8]Dr. Ginsburg also opined that the described symptoms could have been caused by

27  smoking, panic disorder, and obesity, and that he thought the symptoms more likely indicated pulmonary disease.

28                                         - 3 -

radiating to her neck and arm for long periods of time.  Plaintiff testified that she had never before had this pain.  On July 25, 2003, Plaintiff visited Dr. Kevin Klassen, a cardiologist, complaining of progressive dyspnea (difficult or labored breathing) on exertion over the last six (6) months.  Plaintiff also reported mild chest tightness and shortness of breath with radiation to the neck upon brisk walking.  Plaintiff reported the symptoms to be mild but increasing over the last few months.  Dr. Klessen's impression was that coronary artery disease was unlikely, but that Plaintiff did have multiple vascular disease risk factors.  Dr. Klessen ordered an exercise echocardiogram for Plaintiff.

On August 18, 2003, Plaintiff underwent the exercise echocardiogram, the result of which was positive for inducible eschemia.  On August 25, 2003, Plaintiff had an angiogram which confirmed that Plaintiff had acute coronary artery disease.  The next day, Plaintiff had coronary bypass surgery to correct the arterial blockages.

Upon review of Plaintiff's medical history, Fortis Insurance Company denied coverage for Plaintiff's coronary artery disease under the Policy's pre-existing condition exclusion.  While the parties do not, for the most part, dispute Plaintiff's medical history, the parties do dispute whether the symptoms experienced by Plaintiff prior to the effective date of the Policy were produced by coronary artery disease and whether the symptoms "would have allowed one learned in medicine to make a diagnosis" of coronary artery disease or whether the symptoms "should have caused an ordinarily prudent person to seek diagnosis or treatment."

II.  DISCUSSION

A.  Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, summary judgment is mandated "...against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

B.   Fortis Benefits Insurance Company as a Defendant

Defendants seek to dismiss Fortis Benefits Insurance Company ("Fortis Benefits") as a defendant because Fortis Insurance Company ("Fortis") issued the Policy and handled Plaintiff's claim. In opposition, Plaintiff argues that there is a genuine issue of material fact whether Fortis Benefits is a proper party because the "Notice of Privacy Practices" attached to the Policy expressly states that "Insurance policies are underwritten and issued by . . .Fortis Benefits Insurance Company." Plaintiff also argues that the cover letter transmitting the Policy thanks Plaintiff's husband for purchasing the Policy "from one of the Fortis Health member companies, Fortis Insurance Company and John Alden Life Insurance." While these statements are true, the Court finds that the Policy, the declaration page, the identification cards, and the cover page clearly indicate that Fortis, and not Fortis Benefits, issued the

Policy.[9]  Accordingly, the Court finds as a matter of law that the Policy was issued only by Fortis Insurance Company and will grant summary judgment in favor of Fortis Benefits Insurance Company.

    C.   Breach of Contract

Plaintiff has asserted a breach of contract claim against Fortis[10] for its denial of coverage for her coronary artery disease under the Policy's pre-existing condition exclusion. Plaintiff and Fortis have both moved for summary judgment on the breach of contract claim.

    1.  Fortis Insurance Company's Motion

In its motion, Fortis argues that it is entitled to summary judgment on the breach of contract claim because Plaintiff's coronary artery disease was a pre-existing condition. Excluded from coverage under the terms of the Policy are pre-existing conditions, which are defined as follows:

> A Sickness, Injury, disease or physical condition:
>
> 1.    for which the Covered Person received medical treatment or advice from a Physician within the 5 year period immediately preceding the Effective Date of Coverage; or
>
> 2.    which produced signs or symptoms within the 5 year period immediately preceding the Effective Date of Coverage.
>
> The signs or symptoms must have been significant enough to establish manifestation or onset by one of the following tests:
>
>     a.   The signs or symptoms would have allowed one

---

[9]For example, the Policy provides that the definition of "Fortis Insurance," "Us" and "Ours" means Fortis Insurance Company.  Also, the cover page of the Policy states that "Fortis Insurance Company insures You, Your Spouse, and Your dependents who are named in the Policy Schedule."  And, the insurance cards state "Short Term Medical Insurance Identification Card - Administered by Fortis Insurance Company."

[10]Because the Court will grant summary judgment in favor of Fortis Benefits, thereby resulting in its dismissal, the remainder of the Court's discussion concerning Plaintiff's claims will address only Fortis Insurance Company ("Fortis") as the defendant.

learned in medicine to make a diagnosis of the disorder; or

    b.   The signs or symptoms should have caused an ordinarily prudent person to seek diagnosis or treatment.

Fortis does not contend that Plaintiff received medical treatment or advice for coronary artery disease prior to the effective date of the Policy. Thus, the first definition of pre-existing condition is not applicable. Instead, Fortis proceeds under the second definition of pre-existing condition, which requires Fortis to first prove that Plaintiff's coronary artery disease produced signs or symptoms prior to the effective date of the Policy. Once Fortis satisfies this threshold inquiry, Fortis must then prove that the signs or symptoms were significant enough to establish manifestation or onset by one of the following tests: (1) the signs or symptoms would have allowed one learned in medicine to make a diagnosis of coronary artery disease (first "signs or symptoms" test) or (2) the signs or symptoms should have caused an ordinarily prudent person to seek diagnosis or treatment (second "signs or symptoms" test).

A review of Plaintiff's medical records shows she presented to Dr. Ginsburg on July 3, 2002, complaining of soreness/tenderness under the arms and the occasional feeling of something going from the epigastrium to the throat three times per month associated with dizziness and sweating. Thereafter, Plaintiff's medical records show she presented to Dr. Ginsburg on April 14, 2003, two days after the effective date of the Policy, complaining of "fatigue," "shortness of breath with light activity, worse the past month," and non-exertional "chest pain once in a while" lasting one to two minutes. Additionally, Plaintiff's medical records show she presented to an emergency room on July 18, 2003, complaining of chest pain radiating to her neck and arm for long periods of time. Finally, Plaintiff's medical records show she presented to Dr. Kevin Klassen on July 25, 2003, complaining of progressive dyspnea on exertion over the last six (6) months and mild chest tightness and shortness of breath with radiation to the neck upon brisk walking. Plaintiff reported the

symptoms to be mild but increasing over the last few months.  Approximately one month later, testing confirmed that Plaintiff had acute coronary artery disease and she underwent coronary bypass surgery.

Based on a review of Plaintiff's foregoing medical history, Fortis's physicians opine that Plaintiff's coronary artery disease produced signs or symptoms prior to the effective date of the Policy.  Thus, Fortis contends that the threshold inquiry under the second definition of pre-existing condition is satisfied.  In contrast, reviewing the same medical history, Plaintiff's physicians opine that it is impossible to conclude to a reasonable degree of medical certainty that the signs or symptoms were produced by coronary artery disease.  Further highlighting the disputed issue is the fact that Fortis's physicians acknowledge that the symptoms, considered individually, could have been caused by other medical problems and the fact that Plaintiff's physicians acknowledge that the symptoms could have been produced by coronary artery disease.[11]  Based on this record, the Court is unable to conclude that a reasonable jury could not return a verdict for Plaintiff on whether Plaintiff's coronary artery disease produced signs or symptoms prior to the effective date of the Policy.[12]  Accordingly, Fortis's motion for summary judgment, to extent it seeks judgment on the breach of contract claim, will be denied.

---

[11]Nonetheless, Fortis's physicians opine that the nature of Plaintiff's symptoms and her risk factors, as well as the progressive nature of coronary artery disease and the fact that she was diagnosed with coronary artery disease, lead them to conclude that the symptoms were produced by coronary artery disease.  Plaintiff's physicians are similarly steadfast in their opinions.

[12]Because the Court finds a genuine issue of material fact concerning whether Plaintiff had symptoms of coronary artery disease prior to the effective date of the Policy, the Court need not address Fortis's arguments that the signs or symptoms of coronary artery disease would have allowed one learned in medicine to make a diagnosis of coronary artery disease or should have caused an ordinarily prudent person to seek diagnosis or treatment.

1          2. Plaintiff's Motion

2          In her motion for partial summary judgment, Plaintiff advances numerous arguments

3  in support of her contention that she is entitled to summary judgment on the breach of

4  contract claim.  First, Plaintiff argues that her coronary artery disease did not manifest itself

5  prior to the effective date of the Policy because she was not diagnosed or treated for the

6  disease until more than four months after the Policy went into effect.  Further, Plaintiff

7  argues that the pre-existing condition exclusion is intended to exclude those conditions that

8  not only manifest themselves before the effective date of the Policy, but that also are known

9  to the insured prior to the effective date of the Policy.

10         Contrary to Plaintiff's arguments, the pre-existing condition exclusion that Fortis

11 asserts does not require that the disease be diagnosed, treated, or known for manifestation to

12 occur.[13]  Instead, the exclusion requires that the coronary artery disease produced signs or

13 symptoms, before the effective date of the Policy, that were significant enough to establish

14 manifestation by one of the following tests: (1) the signs or symptoms would have allowed

15 one learned in medicine to make a diagnosis of coronary artery disease or (2) the signs or

16 symptoms should have caused an ordinarily prudent person to seek diagnosis or treatment.

17 As the exclusion makes clear, actual diagnosis, treatment, or knowledge is not required.

18         Second, Plaintiff claims that A.R.S. §§ 20-1135 and 20-1379(U)(15) prohibit Fortis

19 from excluding coverage for her coronary artery disease.  A.R.S. § 20-1135, entitled

20 "Prohibition against excluding coverage because of previous tests for a condition," provides:

21              An insurance contract offered by an insurer pursuant to this
              chapter shall not exclude coverage of a condition if the insured
22            person has previously had tests for the condition and the
              condition was not found to exist.  There must be evidence that
23            a condition actually existed before the insurance contract was
              entered into in order to exclude coverage of the condition.

24

25         [13]This is in contrast to the first definition of pre-existing condition (a disease "for
26 which the Covered Person received medical treatment or advice from a Physician within the
   5 year period immediately preceding the Effective Date of Coverage") which requires that
27 the disease be diagnosed, treated or known.

28                                         - 9 -

Plaintiff contends, under the first sentence of § 20-1135, that the fact of her echocardiogram in 1994 that was negative for coronary artery disease prohibits Fortis from excluding coverage for her coronary artery disease. Plaintiff's argument is misguided. While the statute may be poorly phrased, the first sentence of § 20-1135, as supported by the statute's title,[14] means that an insurer cannot exclude coverage for a condition just because the insured previously had a negative test for the condition. The fact that Plaintiff previously had an echocardiogram that was negative for coronary artery disease does not mandate coverage for the disease.

Plaintiff also contends, under the statute's second sentence, that there is no evidence that she actually had coronary artery disease prior to the effective date of the Policy. However, as discussed above, the Court finds there is a question of fact concerning whether Plaintiff's coronary artery disease produced signs or symptoms prior to the effective date of the Policy.

A.R.S. § 20-1379(U)(15) defines pre-existing condition as:

> [A] condition, regardless of the cause of the condition, for which medical advice, diagnosis, care, or treatment was recommended or received within not more than six months before the date of the enrollment of the individual under the health insurance policy or other contract that provides health coverage benefits. A genetic condition is not a preexisting condition in the absence of a diagnosis of the condition related to the genetic information and shall not result in a preexisting condition limitation or preexisting condition exclusion.

Plaintiff argues that the definition of pre-existing condition in the Policy is much broader than that contained in § 20-1379(U)(15) and, therefore, violates the public policy of Arizona. Plaintiff's argument assumes that § 20-1379 is applicable to the Policy.[15] Contrary to Plaintiff's assumption, the Court finds that § 20-1379 is not applicable. A.R.S. § 20-1379

[14]*See State v. Hollenback*, 126 P.3d 159, 161-162 (Ariz. Ct. App. 2005) (providing that the heading of a statute may aid in clarifying ambiguity if such exists).

[15]Plaintiff's argument also assumes that § 20-1379(U)(15) indicates Arizona's public policy on pre-existing condition exclusions.

provides "guaranteed availability of coverage to an *eligible individual* who desires to enroll in individual health coverage." A.R.S. § 20-1379(A) (italics added). An "eligible individual" is one who, *inter alia*, had at least 18 months of continuous creditable coverage, the most recent of which was under one of the health plans enumerated under § 20-1379(P). Here, Plaintiff has failed to show that she had at least 18 months of continuous creditable coverage and that the most recent creditable coverage was under a health plan enumerated under § 20-1379(P). Because Plaintiff has offered no evidence tending to show that she is an "eligible individual" under § 20-1379, the Court finds that § 20-1379 is not applicable to the Policy.

Third, Plaintiff argues that Fortis cannot prove that the coronary artery disease diagnosed on August 25, 2003 produced the symptoms Plaintiff reported to Dr. Ginsburg on April 14, 2003. The Court already has found there are material factual disputes concerning whether Plaintiff's coronary artery disease produced signs or symptoms prior to the effective date of the Policy.

Fourth, Plaintiff contends Fortis cannot prove Plaintiff's symptoms reported to Dr. Ginsburg on April 14, 2003, would have allowed one learned in medicine to make a diagnosis of the disease, as required by the first "signs or symptoms" test for pre-existing condition in the Policy. Plaintiff argues, and Fortis's expert Dr. Ira Ehrlich concedes, that additional diagnostic tests would have been required to diagnose Plaintiff's coronary artery disease. Accordingly, Plaintiff concludes that the first "signs or symptoms" test is ambiguous because construing the test to include such additional diagnostic tests, when the test contains no such language, would construe the test in more than one sense.

In opposition, Fortis argues that the test neither states nor implies that a diagnosis must be based solely on the observance of the insured's signs or symptoms. Fortis further argues that Plaintiff's construction of the test is not reasonable because it is standard in the medical profession to first make a "differential diagnosis" based on the patient's medical history and symptoms and then to conduct tests to confirm the diagnosis.

Provisions of an insurance policy are to be construed "according to their plain and

ordinary meaning." *Sparks v. Republican Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). "Where the language employed is unclear and can be reasonably construed in more than one sense, an ambiguity is said to exist and such ambiguity will be construed against the insurer." *Id*. However, a clause in an insurance policy is not ambiguous "merely because one party assigns a different meaning to it in accordance with his or her own interest." *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 825 (Ariz. Ct. App. 1990); *see also Tenet Healthsystem TGH, Inc. v. Silver*, 52 P.3d 786, 789 (Ariz. Ct. App. 2002) (recognizing distinction between ambiguity and alternate interpretations); *Associated Students of the University of Arizona v. Arizona Board of Regents*, 584 P.2d 564, 568 (Ariz. Ct. App. 1978) ("[t]he mere fact that parties to an instrument disagree as to its meaning does not establish its ambiguity."). If a clause "may be susceptible to different constructions, rather than simply finding ambiguity and resorting to the *contra proferentum* doctrine, [the court] will first attempt to discern the meaning of the clause by examining the purpose of the [clause] in question, the public policy considerations involved and the transaction as a whole." *California Cas. Ins. Co. v. American Family Mutual Ins. Co.*, 94 P.3d 616, 618 (Ariz. Ct. App. 2004) (citations and internal quotations omitted).

The Court declines to find the first "signs or symptoms" test of pre-existing condition to be ambiguous. It is not disputed that the general practice in the medical profession is to diagnose a disorder based on factors like a patient's history and signs or symptoms, as well as any such tests as might be indicated by such factors. By providing that the signs or symptoms *would have allowed* one learned in medicine to make a diagnosis of the disorder, the test's wording is broad enough to recognize that physicians utilize such a systematic process to reach a diagnosis. Nothing in the test's wording compels that a diagnosis be made based only on a patient's signs or symptoms, which construction would ignore the normal medical practice of differential diagnosis.

Plaintiff also contends, under the second "signs or symptoms" test, that Fortis cannot prove that any signs or symptoms of her coronary artery disease should have caused an

1   ordinarily prudent person to seek diagnosis or treatment because she went to see Dr.

2   Ginsburg on April 14, 2003, for reasons unrelated to her coronary artery disease.  This

3   argument again assumes that the symptoms Plaintiff reported to Dr. Ginsburg were unrelated

4   to her coronary artery disease.  As discussed above, the Court finds that there are material

5   factual disputes concerning whether the symptoms Plaintiff reported to Dr. Ginsburg were

6   produced by coronary artery disease.[16]

7        Fifth, Plaintiff contends that the entire pre-existing condition exclusion is ambiguous

8   and should be construed in favor of coverage.  In support, Plaintiff argues that the terms "one

9   learned in medicine," "produced signs or symptoms," "manifestation or onset," "ordinarily

10  prudent person," "diagnosis," "treatment," and "disorder" are not defined and, thus, render

11  the pre-existing condition exclusion ambiguous.  As for the terms "produced signs or

12  symptoms," "manifestation or onset," "diagnosis," "treatment," and "disorder," Plaintiff states

13  that the terms are unclear and can reasonably be construed in more than one sense.  However,

14  Plaintiff fails to demonstrate specifically why the terms are unclear or how they are

15  reasonably construed in more than one sense.  As for the term "one learned in medicine,"

16  Plaintiff argues that Fortis's own physicians and nurses cannot agree on a definition.

17  Regardless, the definition is of no consequence because only licensed physicians have opined

18  that Plaintiff's signs or symptoms would or would not have allowed them to make a diagnosis

19  of coronary artery disease.  Plaintiff and Fortis do not dispute those physicians' qualifications

20  as "ones learned in medicine."  As for the term "ordinarily prudent person," Plaintiff argues

21  that it fails to address gender, which is significant because men and women differ in terms

22

23        [16]Plaintiff's argument also appears to suggest that Fortis cannot satisfy the second

24  "signs or symptoms" test because Plaintiff's signs or symptoms would not have caused an
    ordinarily prudent person to seek diagnosis of or treatment for coronary artery disease.

25  Contrary to this suggestion, the second "signs or symptoms" test does not require that

26  Plaintiff suspect the nature of the disease causing the signs or symptoms before seeking
    diagnosis or treatment.  It is only necessary that Plaintiff have signs or symptoms that were

27  significant enough such that Plaintiff should have sought diagnosis or treatment.

28

1    of their propensity to recognize the symptoms of heart disease and seek diagnosis or

2    treatment therefor.  However, as discussed above, the second "signs or symptoms" test does

3    not require that Plaintiff "recognize" her signs or symptoms as being caused by coronary

4    artery disease or to seek diagnosis or treatment for the specific disease.

5           Plaintiff also argues that the two "signs or symptoms" tests for pre-existing condition

6    are ambiguous because they do not specify by when (i.e., before or after the effective date

7    of the Policy) one learned in medicine would have been able to make a diagnosis or by when

8    an ordinarily prudent person should have sought diagnosis or treatment.  Contrary to

9    Plaintiff's argument, the focus of the two "signs or symptoms" tests is the establishment of

10   a pre-existing condition by the qualitative and quantitative nature of the signs or symptoms

11   produced before the effective date of the Policy.  Thus, it is only important that the signs or

12   symptoms, significant enough to satisfy at least one of the "signs or symptoms" tests, occur

13   before the effective date of the Policy.  Plaintiff's focus on by when one learned in medicine

14   would have been able to make a diagnosis or by when an ordinarily prudent person should

15   have sought diagnosis or treatment, which events are hypothetical in nature, is misdirected.

16          Finally, Plaintiff contends that applying the pre-existing condition exclusion to

17   Plaintiff, even if the exclusion is not ambiguous, would violate the reasonable expectations

18   doctrine.  Under Arizona law, even unambiguous policy language will not be enforced

19   against the insured if the insured had a reasonable expectation of coverage.  *Darner Motor*

20   *Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 396 (Ariz. 1984); *see also*

21   *Gordinier v. Aetna Casualty & Surety Co.*, 742 P.2d 277 (Ariz. 1987) (clarifying *Darner* and

22   setting forth the limited variety of situations in which the reasonable expectations doctrine

23   could apply).  If no material issue of fact exists in a reasonable expectations case, the issue

24   of whether the policy language should be strictly applied or is subject to the insured's

25   reasonable expectations is a question of law for the court to decide.  *State Farm Mut. Auto.*

26   *Ins. Co. v. Falness*, 39 F.3d 966, 967 (9th Cir. 1994).  If there is a question of fact, then it is

27   for the jury to decide whether the reasonable expectations doctrine is to be applied under the

28

circumstances of the case.

Under Arizona law, courts will not enforce even unambiguous language in the following limited situations:

> 1.   Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2.   Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3.   Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;
>
> 4.   Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier*, 742 P.2d at 283-84.   The Court finds there are numerous disputed issues of material fact surrounding the elements of the reasonable expectations doctrine.   Thus, it is for the jury to decide whether the reasonable expectations doctrine is to be applied under the circumstances of this case.   For the foregoing reasons, Plaintiff's motion for partial summary judgment will be denied.

D.   Bad Faith

Fortis moves for summary judgment on Plaintiff's bad faith claim on the basis that it reasonably believed Plaintiff's coronary artery disease was a pre-existing condition under the Policy.   To prove bad faith under Arizona law, an insured must show the absence of a reasonable basis for denying benefits and that the insurance company either knew or recklessly disregarded the fact that it did not have a reasonable basis for denying benefits. *Noble v. National Am. Life Ins. Co.,* 624 P.2d 866, 868 (Ariz. 1981).

1    The first prong of the bad faith test is an objective one based on reasonableness.  *Trus*
2    *Joist Corp. v. Safeco. Ins. Co.*, 735 P.2d 125, 134 (Ariz. App. 1986).  If the actions taken on
3    the part of the insurance company in denying the claim were reasonable, then the insurance
4    company will not be found to have acted in bad faith.  *Id*.  In determining whether the
5    insurance company acted reasonably in a case premised on failure to pay benefits, the court
6    considers whether the insurer's liability under the policy was "fairly debatable."  *See Deese*
7    *v. State Farm Mut. Auto. Ins. Co.,* 838 P.2d 1265, 1268 (Ariz. 1992).  Thus, under the first
8    prong, an insurance company can challenge claims that are fairly debatable without having
9    acted in bad faith.  *See Clearwater v. State Farm Mut. Auto. Ins. Co.*, 792 P.2d 719, 723
10   (Ariz. 1990).

11   If an insured can show that the insurance company lacked an objectively reasonable
12   basis for denying benefits, then the insured must also show that the insurance company
13   committed "consciously unreasonable conduct."  *Trus Joist Corp.*, 735 P.2d at 134.  Under
14   this second prong, which is subjective in nature, "consciously unreasonable conduct" requires
15   that the insurance company either acted knowing it was acting unreasonably or acted with
16   sufficiently reckless disregard of the fact that it did not have a reasonable basis for denying
17   the claim that knowledge can be imputed to it.  *Id*.

18   The Court finds, under the first prong of the bad faith test, that Fortis's actions in
19   denying the claim pursuant to the Policy's pre-existing condition exclusion were reasonable
20   because Fortis's liability under the policy is fairly debatable.  During Plaintiff's visit to Dr.
21   Ginsburg on April 14, 2003, two days after the effective date of the Policy, she reported
22   fatigue, shortness of breath with light activity and chest pain once in a while.  At the very
23   least, the shortness of breath had worsened over the last month.  Further, during Plaintiff's
24   visit to Dr. Klassen on July 25, 2003, she reported progressive dyspnea on exertion over the
25   last six months, and mild chest tightness and shortness of breath with radiation to the neck.
26   Plaintiff further reported that the symptoms had worsened over the last few months.
27   Considering the timing and nature of Plaintiff's reported symptoms, which Fortis's physicians

28

1   opined were caused by coronary artery disease, Plaintiff's subsequent diagnosis with

2   coronary artery disease, and the unambiguous language of the Policy's pre-existing condition

3   exclusion, Fortis clearly acted reasonably in denying benefits based on the Policy's pre-

4   existing condition exclusion.[17]  Accordingly, the Court will grant summary judgment in favor

5   of Fortis on the bad faith claim.[18]

6          E.   Punitive Damages

7          Fortis moves for summary judgment on Plaintiff's claim for punitive damages, arguing

8   that it acted both reasonably and without the required evil mind required under Arizona law.

9   As Fortis argues, to recover for punitive damages, Plaintiff must show something more than

10  the conduct required to state a claim for bad faith.  *Rawlings v. Apodaca*, 726 P.2d 565, 577-

11  78 (Ariz. 1986).  The something more that must be shown is evidence that Fortis was aware

12  of and consciously disregarded a substantial and unjustified risk that significant harm would

13  occur.  *Id.* at 578  ("indifference to facts or failure to investigate are sufficient to establish

14  the tort of bad faith but may not rise to the level required by the punitive damages rule").

15  Said another way, to be liable for punitive damages, Plaintiff must prove "1) evil actions; 2)

16  spiteful motives; or 3) outrageous, oppressive, or intolerable conduct that creates a

17  substantial risk of tremendous harm to others."  *Volz v. Coleman Co.*, 748 P.2d 1191, 1194

18  (Ariz. 1987).

19

20          [17]At oral argument, Plaintiff's counsel argued Fortis was objectively unreasonable
    because it denied Plaintiff's claim without sufficient documentation of Plaintiff's medical
21  records.  However, as Fortis's counsel countered, Fortis was seeking additional medical
    records to determine whether the Policy could be rescinded due to a misrepresentation.
22  Additionally, the Court notes that Plaintiff's medical records from Dr. Ginsburg and Dr.
    Klassen, which support the finding that Fortis acted reasonably in denying benefits, were in
23  Fortis's possession when it considered Plaintiff's claim.

24

25          [18]The bulk of Plaintiff's evidence concerning Fortis's bad faith involves Fortis's alleged
    corporate culture of profitability and compensation.  However, this evidence is relevant only
26  to the second prong of the bad faith test involving subjective intent, which the Court need not
    address because of its finding that Fortis was objectively reasonable in denying Plaintiff's
27  claim.

28                                         - 17 -

1    In this case, the Court already has concluded that Plaintiff's claim is fairly debatable

2    such that Plaintiff's bad faith claim fails as a matter of law.  Accordingly, the Court does not

3    find that Fortis engaged in outrageous, aggravated, malicious, or fraudulent conduct in

4    denying Plaintiff's claim, *see Rawlings*, 726 P.2d at 578, and the Court will grant summary

5    judgment in favor of Fortis on the punitive damage claim.

6    F.   Miscellaneous Motions

7    Also pending before the Court are numerous motions to strike filed by Plaintiff.  First,

8    Plaintiff filed a Motion to Strike the Post-Deposition Affidavits of Drs. Beckman, Brumblay,

9    and Heidenreich (Doc. # 94).  In the motion, Plaintiff argues that the Fortis's physicians

10   testified at their respective depositions that they had no independent recollection of Plaintiff's

11   claim, but in their post-deposition affidavits attested that they know the specific documents

12   reviewed and were able to provide great detail about their decision-making process in

13   denying Plaintiff's claim.  Even if Plaintiff's argument has merit, the Court finds that any

14   disputed issues of fact created by the post-deposition affidavits are not a material issues of

15   fact.  Further, the Court finds that Plaintiff's argument is more properly the subject of cross-

16   examination if and when the physicians testify at the trial of this matter.

17   In addition, Plaintiff argues that the Court should strike the physicians' opinions

18   concerning when one learned in medicine would have made the diagnosis of coronary artery

19   disease.  Plaintiff premises her argument on the fact that the physicians opine that certain

20   diagnostic tests would have allowed one to diagnose Plaintiff's condition, which is contrary

21   to the first "signs or symptoms" test under the Policy.  Because the Court already has ruled

22   that the first "signs or symptoms" test is not ambiguous, Plaintiff's argument is without merit.

23   Accordingly, the Court will deny Plaintiff's Motion to Strike the Post-Deposition Affidavits

24   of Drs. Beckman, Brumblay, and Heidenreich (Doc. # 94).

25   Second, Plaintiff filed a Motion to Strike Paragraphs 40, 41, and 44 from Defendants'

26   Statement of Facts and the Paragraphs in the Post-Deposition Affidavit of Ira Ehrlich, M.D.

27   Referenced Therein (Doc. # 95).  The Court has not relied on the complained of paragraphs

28

of Dr. Ehrlich's affidavit.  Further, much of Plaintiff's argument is more properly the subject of cross-examination if and when Dr. Ehrlich testifies at the trial of this matter.  Accordingly, Plaintiff's Motion to Strike Paragraphs 40, 41, and 44 from Defendants' Statement of Facts and the Paragraphs in the Post-Deposition Affidavit of Ira Ehrlich, M.D. Referenced Therein (Doc. # 95) will be denied.

Third, Plaintiff filed a Motion to Strike Certain Portions of Defendants' Controverting Statement of Facts (Including Evidentiary Objections) and Defendants' Statement of Additional Material Facts (Doc. # 105).   In the motion, Plaintiff argues that Fortis's controverting statement of facts disputes facts based on argument, speculation, inapplicable and/or misstatement of facts, and inconsistent post-deposition affidavits.  Plaintiff also complains that Fortis has made a number of inapplicable evidentiary objections to undisputed evidence.  Finally, Plaintiff complains that Fortis for the first time produced an irrelevant publication that lacks foundation and misstates and/or omits Arizona law.  The Court has based its ruling on the depositions, medical records, and portions of the affidavits submitted by the parties.  The Court did not rely upon Fortis's controverting statement of facts or its evidentiary objections, or the Department of Insurance publication.  Accordingly, Plaintiff's Motion to Strike Certain Portions of Defendants' Controverting Statement of Facts (Including Evidentiary Objections) and Defendants' Statement of Additional Material Facts (Doc. # 105) will be denied.   For similar reasons, Plaintiff's Motion to Strike Certain Portions of Defendants' Controverting and Supplemental Statement of Facts (Including Evidentiary Objections) (Doc. # 119) will be denied.

Finally, Plaintiff filed a Motion to Supplement the Record on Fortis' Pending Motion for Summary Judgment (Doc. # 114).  Plaintiff seeks to supplement the record with a South Carolina decision upholding a bad faith and punitive damage award against Fortis.  As discussed above, the evidence Plaintiff submitted concerning Fortis's alleged corporate culture of profitability and compensation, including the South Carolina decision, is relevant only to the second prong of the bad faith test, which involves subjective intent.  Because the

1   Court has found that Fortis's liability for Plaintiff's claim is fairly debatable under the
2   objective prong of the bad faith test, additional evidence of Fortis's alleged subjective bad
3   faith is irrelevant and Plaintiff's Motion to Supplement the Record on Fortis' Pending Motion
4   for Summary Judgment (Doc. # 114) will be denied.

5   III.   CONCLUSION

6          Based on the foregoing,

7          **IT IS ORDERED** that Defendants' Motion for Summary Judgment or, in the
8   Alternative, for Partial Summary Judgment (Doc. # 87) is DENIED to the extent it seeks
9   dismissal of Plaintiff's breach of contract claim and GRANTED to the extent it seeks
10  dismissal of Plaintiff's claims for bad faith and punitive damages and all claims against
11  Defendant Fortis Benefits Insurance Company;

12         **IT IS FURTHER ORDERED** that Defendant Fortis Benefits Insurance Company
13  is dismissed from this case;

14         **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment
15  Re: Breach of Contract (Doc. # 89) is DENIED;

16         **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Post-Deposition
17  Affidavits of Drs. Beckman, Brumblay, and Heidenreich (Doc. # 94) is DENIED;

18         **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Paragraphs 40, 41, and
19  44 from Defendants' Statement of Facts and the Paragraphs in the Post-Deposition Affidavit
20  of Ira Ehrlich, M.D. Referenced Therein (Doc. # 95) is DENIED;

21         **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Certain Portions of
22  Defendants' Controverting Statement of Facts (Including Evidentiary Objections) and
23  Defendants' Statement of Additional Material Facts (Doc. # 105) is DENIED;

24         **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Certain Portions of
25  Defendants' Controverting and Supplemental Statement of Facts (Including Evidentiary
26  Objections) (Doc. # 119) is DENIED;

27         **IT IS FURTHER ORDERED** that Plaintiff's Motion to Supplement the Record on

28

1   Fortis' Pending Motion for Summary Judgment (Doc. # 114) is DENIED;

2        **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Disposition of

3   Her Motion to Supplement the Record on Fortis' Pending Motion for Summary Judgment

4   (Doc. # 116) is DENIED as moot.

5        DATED this 19th day of December, 2006.

10   James A. Teilborg
     United States District Judge

- 21 -